IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOAN R. JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:02cv0179 |
| ) | |
| NASHVILLE PUBLIC RADIO and ROB GORDON, ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Defendants Rob Gordon and Nashville Public Radio ("NPR") (collectively with Mr. Gordon, "Defendants"), seek summary judgment of Plaintiff Joan R. Jenkins' state-law claims for outrageous conduct, intentional misrepresentation and negligent misrepresentation, and dismissal of the claims asserted against Defendant Gordon individually for gender and race discrimination under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). For the reasons set forth below, the Court will grant summary judgment in Defendants' favor as to each of the state law claims asserted in Ms. Jenkins' complaint. Specifically, (1) even assuming Ms. Jenkins was subject to racial and/or sexual discrimination, the undisputed facts are not sufficiently "outrageous" to support a claim for intentional infliction of emotional distress; (2) Ms. Jenkins cannot point to any specific untrue representations upon which she relied to her detriment, as required to prove a claim for misrepresentation or fraud; and (3) Mr. Gordon cannot, as a matter of law on the undisputed facts, be held individually liable under Title VII or the THRA.

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find

for the non-moving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587; Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir. 1993). Of course, in responding to a motion for summary judgment, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere conclusory allegations and subjective beliefs are not sufficient to defeat a properly supported motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).

## II.     PROCEDURAL BACKGROUND

Defendants previously filed a Motion for Summary Judgment (Doc. No. 11) seeking dismissal of all claims asserted against them in this action. This Court (Campbell, J.) granted the motion for summary judgment and dismissed with prejudice Ms. Jenkins' claims for racial and gender discrimination under Title VII, 42 U.S.C. § 1981 and the THRA, and dismissed without prejudice the pendant state-law claims without reaching the merits of the latter. The United States Court of Appeals for the Sixth Circuit reversed the grant of summary judgment and remanded this action for further proceedings. Pursuant to an Order entered August 2, 2005 (Doc. No. 62), the Court reinstated the state-law claims. The present motion seeks dismissal of those claims.

## III.    FACTUAL BACKGROUND

Ms. Jenkins is an African-American woman who went to work for Nashville's public radio station, WPLN (then operating under the authority of the Nashville Public Library) in January 1994 as Corporate Support Manager. Defendant Rob Gordon became the President or General Manager of WPLN in March 1995. In 1996, Defendant NPR came into existence for the purpose of taking over the ownership and operations of WPLN. Mr. Gordon has been the President and GM of NPR since that time. Also in 1996, Ms.

Jenkins was offered and accepted employment with NPR as Corporate Support Manager, the same position she occupied when she resigned her employment on December 1, 2000.

NPR advised its employees on July 27, 2000 that it would be accepting applications for the position of Vice President of Marketing and Development beginning on July 28, 2000, as the person who had formerly held that position had resigned. The deadline initially specified for submitting applications was September 15, 2000, but that deadline was subsequently extended to October 13, 2000. On August 28, 2000, NPR announced that it was "splitting" the position of Vice President of Marketing and Development into two positions, Director of Corporate Support and Director of Membership Support, and that it was seeking applications for both positions. The deadline initially specified by NPR for submitting applications for either position was October 15, 2000, but that deadline was subsequently changed to October 13, 2000 because the 15th fell on a Sunday. According to NPR, the Vice President of Marketing and Development position remained open while applicants were pursued for the Director of Corporate Support and Director of Membership Support. (Doc. No. 65, ¶ 7.) Ms. Jenkins does not actually dispute Defendants' allegation in that regard, but claims that her understanding was that the two directorship positions would be filled and that the Vice President position would remain open as a sort of "phantom" position (Doc. No. 68, ¶ 7). She maintains that this situation was very confusing. (Id.) She does not, however, offer any evidence suggesting the Defendants created the confusion intentionally for the purpose of foiling her ability effectively to apply for the open position or positions.

On October 11, 2000, NPR decided it would, after all, fill the position of Vice President of Marketing and Development, but the position was renamed "Director of Marketing and Development." (Doc. No. 68, ¶ 8.) NPR did not make an official announcement of this decision. (Id.) The deadline for submitting applications for that position continued to be October 13, 2000. (Id.)

Ms. Jenkins expressed her interest in the position of Vice President (or Director) of Marketing and Development to Mr. Gordon some time in August or September of 2000. On October 13, 2000, she submitted a resume and cover letter to Mr. Gordon, thus formally announcing her candidacy for the open position. She was interviewed on November 1, 2000. Dan Surface, who was ultimately hired for the position, interviewed with NPR on two or three occasions beginning September 15, 2000, initially for the position of Director of Corporate Support and then for the position of Director of Marketing and Development. Jenkins

3

and Surface were the only two individuals interviewed for either position. Plaintiff maintains, however, that by the time she was interviewed, Surface had already been hired for the position. (Doc. No. 68, ¶ 10 (citing Gordon Dep. at 189; Surface Dep. at 97.) Mr. Surface offered some testimony in his deposition that he had been offered the job in late September or early October, before Ms. Jenkins was interviewed, but he was very non-specific about the date.[1] Documentary evidence in conjunction with Mr. Gordon's deposition testimony indicates he made a verbal offer to Mr. Surface sometime during the week of November 9, 2000 and then followed up with a written offer dated November 16, 2000. (See Gordon Dep. at 192:6 - 193:6, and Exs. 25 and 26.) In other words, it appears most likely that Mr. Surface was offered the job after Ms. Jenkins had been interviewed and around the same time she was notified that she had not been selected for the position, which occurred on November 8, 2000. The ultimate decision to hire Mr. Surface and not to hire Ms. Jenkins was made by Rob Gordon. Regardless of when he made the decision or actually offered the job to Mr. Surface, Mr. Gordon concedes he knew at the time he interviewed Ms. Jenkins that he was not going to offer the position to her, because he did not feel she was qualified for it. (See Gordon Dep. at 189.)

Plaintiff alleges that she was more qualified than Dan Surface, and that Defendants' failure to offer her the position of Director (or Vice President) of Marketing and Development was the result of racial and/or sexual discrimination, as a result of which she allegedly incurred damages in the form of physical pain and suffering, stress, anxiety, crying, stomach problems, early onset of menopause and diminished libido.

## IV.    LEGAL ANALYSIS

### A.    *Plaintiff Fails to Allege Facts Sufficient to Support a Claim of "Outrageous Conduct."*

In Medlin v. Allied Investment Co., 398 S.W.2d 270 (Tenn. 1966), Tennessee first recognized a claim for the tort of "outrage," also called intentional infliction of emotional distress ("IIED") (see Bain v. Wells, 936 S.W.2d 618, 622 n.3 (Tenn. 1997)), when it adopted section 46 of the Restatement (Second) of Torts. That section states:

One who by extreme and outrageous conduct intentionally or recklessly causes severe

---

[1] When asked if he recalled when he was offered the job, whatever the title, Mr. Surface answered:
A.    I can't remember the exact date. I think it was late in September. And I can't remember if Rob called me or if I was calling him. . . .
Q.    You said late September?
A.    I believe so. . . . Or early October. I can't remember exactly when it was.
(Surface Dep. at 97:10–22.)

4

emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1) (1965), quoted in Bain, 936 S.W.2d at 274. Tennessee courts have subsequently identified the following as required elements of a claim for IIED: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff. Bain, 936 S.W.2d at 622. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts § 46(1) cmt. h, quoted in Medlin, 398 S.W.2d at 275; see also Alexander v. Inman, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991).

The Medlin court emphasized that liability for mental distress damages "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." Medlin, 398 S.W.2d at 274 (internal quotations omitted). While acknowledging that "no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious," Bain, 936 S.W.2d at 622, Tennessee has adopted the demanding standard described in the Restatement (Second) of Torts as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

Id. (quoting Restatement (Second) of Torts § 46 comment d (1965)); see also Medlin, 398 S.W.2d at 274; Goldfarb v. Baker, 547 S.W.2d 567, 568–69 (Tenn. 1977); Blair v. Allied Maintenance Corp., 756 S.W.2d 267, 273 (Tenn. Ct. App. 1988); Holt v. Am. Progressive Life Ins. Co., 731 S.W.2d 923, 926–27 (Tenn. Ct. App. 1987); Bryan v. Campbell, 720 S.W.2d 62, 64–65 (Tenn. Ct. App. 1986).

This is an extremely high standard for the plaintiff to meet.[2] Under this standard, Ms. Jenkins clearly

---

[2] For instance, in Lourcey v. Estate of Scarlett, 146 S.W.3d 48 (Tenn. 2004), the court found plaintiff's allegations sufficient to support a claim of IIED where defendant told plaintiff his wife was having a seizure and, as plaintiff was calling 911 for help, defendant shot his wife in the head, turned to face the plaintiff, put a pistol to his head, pulled the trigger, and killed himself. The court noted that this conduct "was not simply a tragedy that is common to daily life" but rather "was outrageous in character, extreme in degree, beyond

5

does not satisfy her burden of demonstrating that Defendants engaged in conduct that qualifies as outrageous. In her response brief, the only facts to which Ms. Jenkins points in support of her IIED claim, in addition to those that support her claim for discrimination, are that (1) Mr. Gordon had already decided to hire Dan Surface at the time he interviewed Ms. Jenkins; (2) Mr. Gordon gave Ms. Jenkins a list of questions for her to review in preparation for her interview even knowing that he had already hired or was planning to hire someone else; and (3) all these acts were "part of a scheme" to keep her employed at her then current level of employment. (Doc. No. 67, at 9.) In her Complaint, Ms. Jenkins alleged only that "Defendants failed to or refused to hire [her] for the position in question because of her race and/or sex, in violation of her rights under the THRA. Furthermore, such conduct of the Defendants was outrageous. . . ." (Compl. ¶ 11.) In other words, Plaintiff maintains that Defendants violated state and federal law in discriminating against her in a hiring decision because of her race or gender. Alleging a violation of anti-discrimination laws, without additional evidence showing conduct so outrageous as not to be tolerated in civilized society, is simply insufficient to prove intentional infliction of emotional distress. See McNeail-Tunstall v. Marsh USA, 307 F. Supp. 2d 955, 977 (W.D. Tenn. 2004) (denying summary judgment on racial discrimination claim but granting summary judgment on IIED claim); Richardson v. CVS Corp., 207 F. Supp. 2d 733, 746 (E.D. Tenn. 2001) (denying summary judgment on FMLA retaliation claim but granting summary judgment on IIED claim).

Accordingly, Defendants are entitled to summary judgment in their favor and dismissal of Ms.

---

all possible bounds of decency, and utterly intolerable in a civilized society." Id. at 52. See also Pollard v. E.I. DuPont de Nemours Co., 213 F.3d 933, 947 (6th Cir. 2000) (finding fact issue on outrageousness when plaintiff suffered consistent harassment over several years, her work was sabotaged, she was subjected to juvenile pranks, her personal safety was compromised, she was forced to resign from her shift, and she was constantly told that women were inferior), rev'd on other grounds, 532 U.S. 843 (2001); Evans v. Detlefsen, 857 F.2d 330, 337 (6th Cir.1988) (finding evidence sufficient to support outrageousness when plaintiff suffered personal vindictiveness, threats, intimidation, and verbal and physical abuse from a police officer after a minor traffic offense). Conversely, in Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529 (Tenn. Ct. App. 2003), the court affirmed summary dismissal of plaintiffs' IIED claim on the basis that the conduct alleged–-refusing to deliver pizzas to African-Americans who resided on or adjacent to Lundee Street in Memphis—was not sufficiently extreme or outrageous to permit recovery for IIED. In so doing, the court noted, "Certainly, discrimination based on race is insulting and humiliating. The discouragement of such discriminatory behavior is at the very core of the federal Civil Rights Act and the Tennessee Human Rights Act. However, discriminatory conduct does not automatically give rise to the imposition of liability for intentional infliction of emotional distress. If it did, virtually every action brought under these statutes would include an intentional infliction of emotional distress claim." Id. at 540; see also Jones v. Tenn. Valley Auth., 948 F.2d 258, 266 (6th Cir.1991) (where supervisors intimidated plaintiff by assigning him to menial tasks, unfairly reprimanded him, gave him low performance appraisals, monitored his communications with government agencies, attempted to gain access to his medical records, and barred him from promotions, bonuses, and raises, the court found the evidence insufficient to show outrageousness, noting that "tortious conduct is not necessarily synonymous with 'outrageous' conduct").

6

Jenkins' IIED claim.

### B. Plaintiff Fails to Allege Facts Sufficient to Prove a Claim for Intentional Misrepresentation.

Defendants argue that Plaintiff's intentional misrepresentation claim must be dismissed because Plaintiff can point to no facts that were misrepresented, since Plaintiff does not claim that she ultimately failed to understand the hiring process such that she was unable to timely apply for the open position(s). (Doc. No. 64, at 11.) Ms. Jenkins argues Defendants represented that they were accepting applications until October 13, 2000, and that she was "led to believe" that she was applying and interviewing for a position that was actually available at the time of the interview. She prepared for the interview in reliance upon Defendants' representations that the position was still open. Ms. Jenkins allegedly later learned, however, that Mr. Surface was offered and accepted the open position in late September or early October. As Ms. Jenkins states, "[a]t a bare minimum, Defendants suppressed from Plaintiff the fact that Dan Surface was hired for the position, and she thus continued to prepare for her interview in reliance on Defendants' previous misrepresentations that there was an available position." (Doc. No. 67, at 13.) NPR has presented documentary evidence and the testimony of Mr. Gordon that shows Mr. Surface likely was not actually offered the job until early November 2000, after Ms. Jenkins had been interviewed and around the same time she was notified that the job would not be offered to her. (See R. Gordon Dep. at 192–93.) Regardless, it is undisputed that Defendants knew at the time they interviewed her that Ms. Jenkins would not be offered the position she sought.

To prove a claim for fraudulent or intentional misrepresentation, a plaintiff must show that (1) defendant made a representation of fact; (2) the representation was false; (3) the representation was made either knowingly, recklessly, or without belief in its truth; (4) the plaintiff acted reasonably in relying on the representation; and (5) the plaintiff suffered damages as a result of the representation. City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996); see also Axline v. Kutner, 863 S.W.2d 421, 423 (Tenn. Ct. App. 1993).

In this case, Ms. Jenkins has not pointed to any specific statement or representation of fact made to her that was false and that she relied upon to her detriment. As a result, she cannot prove a cause of action for fraudulent misrepresentation. Certainly, Defendants knew at the time they interviewed her that they did not intend to promote Ms. Jenkins to the open position and that they did intend to offer the job to Mr.

7

Surface, regardless of whether Mr. Surface's testimony as to when he first received a job offer can be construed as creating a genuine issue of disputed fact as to that point. Notwithstanding, Ms. Jenkins does not allege that anyone told her, in so many words, that no decision had been made regarding who would be offered the position, and no one told her she would get the job. Instead, what Ms. Jenkins is asserting is that Defendants knew but failed to tell her that she was not being seriously considered for the job at the time she interviewed, and that they already knew but failed to tell her they intended to extend an offer to Mr. Surface. As a result, she needlessly wasted her time preparing for the interview.

While Tennessee recognizes a claim for "fraudulent omission" or "fraudulent concealment," Ms. Jenkins has not attempted to state such a claim here, nor is such a claim supported by the facts presented. "Generally speaking, fraudulent concealment exists when a party *having a duty* to disclose some fact or facts intentionally hides the facts with the intent to mislead the other party." Cherry v. Williams, 36 S.W.3d 78, 85 (Tenn. Ct. App. 2000) (emphasis added) (citing Spence v. Miles Labs., Inc., 810 F. Supp. 952, 964 (E.D. Tenn. 1992) (applying Tennessee law)). Thus, for the concealment of information to be actionable as fraud, "there must be a suppression of material facts that one party was *legally or equitably obligated to communicate.*" Id. (emphasis added).

Believing that Tennessee courts would do the same, the Court concludes as a matter of law that Defendants had no affirmative duty or obligation to disclose to Ms. Jenkins, at the time they interviewed her, that they had already made a decision to offer the job in question to someone else. To require otherwise would be significantly upsetting to the business world as a whole. In situations where discrimination is not an issue but hiring and keeping good employees is, it would be unreasonable to expect employers to always be completely and immediately forthcoming regarding their hiring decisions. Moreover, even if there were such a duty, Ms. Jenkins does not allege that she suffered damages as a result of preparing for the interview itself; instead, the damages arose from the alleged discrimination and the decision to hire Mr. Surface instead of promoting her to the position in question.

Because there was no affirmative false representation made to Ms. Jenkins upon which she relied to her detriment, and because Defendants cannot be held liable for failing to disclose to her information they had no duty or obligation to disclose to her, Defendants are entitled to summary judgment in their favor on Ms. Jenkins' intentional fraud claim.

8

### C. Plaintiff Fails to State a Claim for Negligent Misrepresentation.

The elements of a claim for negligent misrepresentation under Tennessee law are well established. Persons asserting a negligent misrepresentation claim must prove that: (1) the defendant was acting in the course of its business, profession, or employment, (2) the defendant supplied false information for the guidance of others in the course of its business transactions, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff justifiably relied on the information. John Martin Co. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431 (Tenn. 1991); Sears v. Gregory, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004).

Ms. Jenkins has not stated a claim in this case for negligent misrepresentation under Tennessee law, and Defendants' motion for summary judgment on that claim will be granted.

### D. Defendant Gordon Is Not Subject to Individual Liability Under Title VII or the THRA.

Plaintiff concedes that Rob Gordon may not be held individually liable under Title VII, but continues to maintain that disputed issues of material fact preclude summary judgment in his favor on the THRA claim asserted against him in his individual capacity.

Supervisors generally cannot be individually liable under the THRA. McNeail-Tunstall, 307 F. Supp. 2d at 974; Carr v. United Parcel Serv., 955 S.W.2d 832, 835 (Tenn. 1997), overruled on other grounds, Parker v. Warren County Util. Dist., 2 S.W.3d 170 (Tenn. 1999). Notwithstanding, the THRA does permit liability of individual defendants for aiding, abetting, inciting, compelling, or commanding an employer to engage in any discriminatory acts or practices. See Tenn. Code Ann. § 4-21-301(2); Carr, 955 S.W.2d at 835–36. The THRA does not define "aiding and abetting," so the Tennessee Supreme Court has referred to the analogous theory under the common law, requiring that the individual defendant (1) know that the employer's conduct constituted a breach of duty and (2) give substantial assistance or encouragement to the employer in its discriminatory acts. Carr, 955 S.W.2d at 836. Liability, however, is not imposed based on the individual defendant's *own* discriminatory acts; it requires distinct conduct that aids or abets discrimination by the employer. Id. at 836, 838. See also Crutchfield v. Aerospace Ctr. Support, 202 F.3d 267, 1999 WL 1252899, at *2 (6th Cir. Dec.14, 1999) (affirming district court's grant of summary judgment in favor of individual defendant on THRA claim when defendant's actions adverse to plaintiff's employment were all within the legitimate scope of defendant's delegated management authority); McNeail-Tunstall, 307 F. Supp.

9

2d at 975 (granting summary judgment in favor of individual supervisors where all the actions allegedly taken by the individual defendants occurred within the legitimate scope of their supervisory authority, in which capacity they acted as agents of the employer, thus precluding individual liability under the THRA).

In her Response brief, Ms. Jenkins claims that Mr. Gordon's acts in discriminating against her also assisted, or aided and abetted, NPR in its own discrimination by perpetuating a history of past racial discrimination. She does not point to any specific act on the part of Mr. Gordon in doing so, however, nor does she actually assert a claim against NPR for "past discrimination" unrelated to NPR's specific failure to hire her for the position she sought. Based upon Ms. Jenkins' allegations, it is clear that Mr. Gordon was acting in his supervisory capacity as agent for NPR when he made the decision to interview her and the decision not to offer the open position to her. (See Doc. No. 68, ¶¶ 5, 6, 8, 11, 12, and citations to the record referenced therein.) Ms. Jenkins does not allege any actions by Mr. Gordon separate and apart from those taken in his capacity as manager and agent for NPR that give rise to her THRA claim against NPR.

The Court therefore must grant summary judgment in favor of Mr. Gordon in his individual capacity on the THRA claim and, as Ms. Jenkins concedes, on the Title VII claim as well.

## V. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment in favor of Defendants on all of Plaintiff's state-law claims, including the claims for intentional infliction of emotional distress, intentional misrepresentation, and fraudulent misrepresentation. The Court will also grant summary judgment to Defendant Rob Gordon as to the Title VII and THRA claims asserted against him in his individual capacity. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge